STATE OF MAINE  SUPERIOR COURT
SOMERSET, SS. CIVIL ACTION
DOCKET NO.: CV-03-076

DOCKET CASSIDY
JUL 29 2005

PAUL GARAND and
SUSAN GARAND,

        Plaintiffs

        V.                                      **D E C I S I O N**

SNOWSHOE VILLAGE UNIT
OWNERS ASSOCIATION,

        Defendants

Before this court is a three-count complaint brought by the plaintiffs against the defendant. Roy Pierce, Esq. appeared on behalf of the plaintiffs and John Wall, Esq. appeared on behalf of the defendants.

Introduction

Plaintiffs have brought a three-count complaint requesting a declaratory judgment in counts one and two and alleging a breach of good faith in count three. The controversy in this case surrounds the rights and obligations of the association members under the bylaws and regulations of Snowshoe Village Condominiums. The plaintiffs are asking this court to find that they had received approval for the work done on unit 24. Further, they are asking that this court find that the defendants waived their rights to insist on strict compliance with the rules and regulations. Finally, the plaintiffs are asking for monetary damages and attorneys fees pursuant to the alleged defendant's breach of its duty of good faith imposed by 33 M.R.S.A. §1601-113.

<u>Facts</u>

The Garands are the owners of unit 24 of the Snowshoe Village Condominiums in Embden, Maine. Snowshoe Village Association manages the condominiums, which consists of 36 units located on the shores of Embden Lake.

On November 14, 2002, Paul Garand appeared before the town of Embden's planning board to obtain a permit regarding an addition to unit 24. The application that was presented to the board (Exhibit 28) sets out the dimension of the addition, but it does not mention the type or color of the siding to be used.

On November 24, 2002, Susan Garand appeared before the Snowshoe Village Association board of directors to request approval of an addition to unit 24. Susan Garand was a member of the board of directors at the time. Ms. Garand stated that she told the board the likely color and siding material and offered to show them a sample of said material. Board members, who were at that meeting, indicate that Ms. Garand did not discuss with them the material or the color.

The minutes of the meeting on November 24, 2002, indicate that the board voted to approve the requested construction with the requirement that the building permit obtained from the town be submitted to the board.

Nancy Kozlowski was at the November 24, 2002 meeting, but doesn't remember anything discussed at that meeting. Katherine Merrow stated that there was no mention of the siding material or color at the meeting. Michael Sackett also indicated that there was no mention of the siding or color at the meeting.

The bylaws of the Snowshoe Village Association (Exhibit 3) make no mention of additions or requirements for additions to any units. The Declaration (Exhibit 1) states in section 6.2(b) that no addition may be made without the prior written consent of the board of directors. It further states that no owner shall change the external appearance without prior written consent of the board.

Although the board never approved the color, it did approve the addition without addressing the issue regarding the siding, including the color of the main portion of the unit. Although the board approved the project, as reflected in the minutes of the November 24, 2002 meeting, it never gave written permission.

Mr. Garand began the work on his addition in the spring of 2003. On April 27, 2003, Ms. Merrow, as president of the board of directors, gave notice to the plaintiffs that the plaintiffs had violated section 6.6 of the condominium declaration. A board meeting was held on April 27, 2003, (Exhibit 47) but there was no mention of Ms. Merrow delivering this so called stop order to Mr. Garand. Michael Sackett, a member of the board, testified that following the meeting of April 27th, the board visited the building site and then held another meeting where they decided that the color was too light. Mr. Sackett referred to it as "a color that looked yellow". This action by the board following their meeting of April 27, 2003 was never documented by any board minutes. Although the board gave Mr. Garand a stop order, there is no provision in the bylaws or the declaration for any stop orders; however, it did put the plaintiffs on notice of a controversy surrounding the vinyl siding they were installing. At the time of the notice on April 27, 2003, Mr. Garand indicated that he had installed the vinyl siding on one side of the addition. He estimated that he had put up one hundred to two hundred square feet of a total project consisting of 1,000 square feet. Mr. Garand also indicated that he had purchased the vinyl siding and could not return it at the time of this notice. Mr. Garand completed the installation of all this siding following the deliverance of this notice.

On September 1, 2003, Ms. Merrow, as president of the board, sent a letter to the plaintiffs (Exhibit 38) demanding that the vinyl siding be removed and replaced by wood siding-stained or painted a brown, to be preapproved by the board. It further alleged violation of sections 2.4(d), 6.2(b) and 6.6(2).

The letter also indicated that if this wasn't done within 10 days, a penalty of 10% of the monthly assessment per day would be assessed against the plaintiffs.

On November 7, 2003, the board in another letter from Ms. Merrow (Exhibit 40) indicated that in addition to the penalty assessment referred to above, they were going to shut off the water and cable to unit 24.

This action by the board and by the plaintiffs has led to this controversy before the court.

## Discussion

The case before this court surrounds the issue as to whether the plaintiffs violated the declaration and/or bylaws by installing vinyl siding, the color Monterey Sand, without the written permission of the board of directors.

Plaintiffs argue that it got permission for the addition even though the board did not require specific information as to the type and color of the siding before granting the permit. Plaintiffs allege that this permission granted by the board was in compliance with the bylaws and/or the declaration. They are arguing that since the board did not demand more specifics regarding the project, they cannot complain after the plaintiff purchased the siding that was within the Association's "past practice" as to the type of siding and the color of siding.

Past practice of the Snowshoe Village board indicates that many things were done informally and many assumptions were made by all parties involved in this case. The presence of unit members on the board and past actions taken by the board shows a clear deviation from strict compliance with all of the rules and regulations of the association.

With regard to the type of siding and color that the Association permitted to be put on units, there was a great deal of confusion and ambiguity. There appeared to be confusion regarding the allowance of vinyl siding; however, the evidence indicates that the so-called Moody case resolved the issue of vinyl siding. On July 31, 2000, the minutes of the board meeting state, "vinyl siding is okay" (Exhibit 4). In view of this clear acceptance of vinyl siding as an acceptable siding, this court questions why the notice sent to the plaintiffs on September 1, 2003, (Exhibit 38) demands that the Garands replace the vinyl siding with wood siding. This leads the court to believe that initially the board incorrectly asserted that vinyl siding was not acceptable under the bylaws or minutes of the association. At the time of the trial, the defendants have conceded that vinyl siding was not a problem and was in compliance with the Association's rules and regulations. Nevertheless, as of the time that this controversy arose, it raises some question as to the confusion and ambiguity as to what was and was not permitted by the Association.

4

The court now turns to the issue of color. Here again there is a great deal of confusion. On July 31, 2000, (Exhibit 4) the board discussed the color to be placed on condominium units. The minutes state the following:

"Vinyl siding is okay if it comes in colors that are brown, shake shingles come in brown."

A board meeting was held several months later on September 10, 2000, regarding the Moody controversy. Mr. Moody had placed vinyl siding on his unit without permission. This unit is shown in Exhibit 73. The minutes of that meeting state:

"Rob Moody's siding approved as threshold for siding".
"Brown and shades thereof, will be the external color. Katie and Ruth to make up color board (trim also)" (Exhibit 7).

It should be noted that the color board was never done.

At the annual meeting on July 22, 2001, the minutes indicated that the board adopted standard colors for exterior of units, but never indicated what the standard colors were. It also established a review committee for unit owners' construction projects. Here again the testimony surrounding this review committee and the standards colors indicate that standard colors were never adopted and a review committee was never organized.

The minutes of the board indicate that the accepted color was brown or a shade thereof. Despite this statement in the minutes, many board members indicated that although the accepted color was a shade of brown, it had to be lighter than Moody's. This was the testimony of Nancy Kozlowski. Mr. Agren, a former board member, said that the plaintiff's shade of brown was lighter than ever agreed upon. Mr. Sackett said that the Moody vinyl was the lightest benchmark to be allowed. He indicated this was conveyed to all of the unit owners and referred to a letter dated August 10, 2000. (Exhibit 6) This letter stated that the outside of the units had to be brown. There is no mention of the shade of brown or that it had to be lighter than the Moody's shade.

This court finds that the color to be used by unit owners had to be "brown or shades thereof". The board never gave any other notice to the unit owners. The board authorized that a color board be produced, but it never was. The annual meeting in July of 2001 makes reference to the fact that the board adopted standard colors for exterior units, but there is no indication as to what these colors are.

5

The defendants assert that the Moody unit was supposed to be the standard and made reference in the minutes to the term "threshold". However, the minutes regarding the Moody controversy clearly indicate that the term threshold refers to the vinyl siding, not the color. The language in the minutes pertaining to the color indicates "brown and shades of brown".

There was no reference anywhere as to what shades of brown were acceptable, i.e. lighter or darker. The defendants' witnesses assertion that the board had accepted brown, but no lighter than the Moody's, is not documented. The defendant's witnesses can see that the color chosen by the plaintiffs (Monterey Sand) is a shade of brown, but argue that it is too light a shade of brown.

Even if the Moody color was the standard, this court finds an insignificant difference between the shades of brown when comparing the color put on unit 24 (Exhibit 45), and the shade of brown in the piece of vinyl (Exhibit 44) and a photo of the Moody building (Exhibit 73).

Since this court finds that the standard for colors on the exterior of units of Snowshoe Village is brown or shades thereof, this court finds that the color used by the plaintiffs is in compliance with the colors adopted by the board of directors. Because of the past history of inconsistency of its enforcement of its bylaws and rules regarding the exteriors of buildings, and because of the confusion surrounding the standard of color to be used, this court finds that the vinyl siding of Monterey Sand is in compliance. The court finds that the plaintiffs failed to follow all of the necessary steps to get prior written approval to change the color; however, the court also finds that the board did approve the project without knowing all of the specifics of the project and therefore is now estopped from claiming a violation of the procedures to be used when the color used by the plaintiffs is not in violation of the rules

Under the facts and circumstances of this case, this court finds that the violation by the plaintiff to fully comply with all of the processes of prior approval is not material or substantial. Wherefore, the court finds that the plaintiff is not in violation of the bylaws and/or the declaration, and therefore is not subject to the 10% penalty or the termination of its water and cable.

6

Further, the court finds that the evidence does not support the plaintiff's claim of breach of good faith and denies its claim for monetary damages and attorneys fees as alleged in Count three.

It is hereby ordered that judgment be entered in favor of the plaintiffs in counts one and two. The judgment shall read that the plaintiffs are not in violation of the Association's bylaws and/or declaration; therefore the defendants are not allowed to assess any penalties against them nor are the defendants allowed to turn off the plaintiffs' water and cable.

It is furthered ordered that judgment shall entered in favor of the defendants on plaintiffs count three.

At the direction of the court, this order shall be incorporated into the docket by reference pursuant to Maine Rules of Civil Procedure 79(a).

DATED:____5 - / 8 - o 5____

Joseph M. Jabar
Justice, Maine Superior Court

7

PAUL H GARAND   - PLAINTIFF
821 OCEAN AVENUE
PORTLAND ME 04103
    orney for: PAUL H GARAND
ROY PIERCE   - RETAINED 12/05/2003
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546


SUSAN E GARAND   - PLAINTIFF


Attorney for: SUSAN E GARAND
ROY PIERCE   - RETAINED 12/05/2003
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546



vs
SNOWSHOE VILLAGE UNIT OWNERS ASSOCIATION - DEFENDANT


Attorney for: SNOWSHOE VILLAGE UNIT OWNERS ASSOCIATION
JOHN WALL   - RETAINED 12/30/2003
MONAGHAN LEAHY LLP
95 EXCHANGE ST
PO BOX 7046
   TLAND ME 04112-7046

SUPERIOR COURT
SOMERSET, ss.
Docket No   SKOSC-CV-2003-00076


**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: DECLARATORY JUDGMENT
Filing Date: 12/05/2003

## Docket Events:

12/05/2003 FILING DOCUMENT - COMPLAINT FILED ON 12/05/2003
          WITH EXHIBITS A, B, C, AND D. TOGETHER WITH COMPLAINT SUMMARY SHEET AND FILING FEE.

12/05/2003 Party(s):  PAUL H GARAND
          ATTORNEY - RETAINED ENTERED ON 12/05/2003
          Plaintiff's Attorney: ROY PIERCE

          Party(s):  SUSAN E GARAND
          ATTORNEY - RETAINED ENTERED ON 12/05/2003
          Plaintiff's Attorney: ROY PIERCE

12/05/2003 Party(s):  PAUL H GARAND,SUSAN E GARAND
          OTHER FILING - OTHER DOCUMENT FILED ON 12/05/2003
          :"ATTORNEY CERTIFICATION"

12/05/2003 Party(s):  PAUL H GARAND,SUSAN E GARAND
          OTHER FILING - AFFIDAVIT FILED ON 12/05/2003
          OF PAUL H. GARAND WITH EXHIBITS A,B,C,D

1. 05/2003 Party(s):  PAUL H GARAND,SUSAN E GARAND
          OTHER FILING - AFFIDAVIT FILED ON 12/05/2003